THE ATTORNEY GENERAL
OF TEXAS
GERALD C. MANN
ATTORNEY GENERAL



Game, Fish and Oyster Commission
Austin, Texas

Gentlemen:

Attention: Honorable A. E. Wood,
Chairman.

Opinion No. 0-2209-A - Supplemental
Re: Interpretation of Articles
4053 and 4053d relative to
the sale of mudshell.

Pursuant to the request contained in your letter of May 3, 1940, this will supplement Opinion No. 0-2209 relative to the authority of your Commission to contract for the sale of mudshell belonging to the State of Texas. Your questions are as follows:

"1. Before a permit can be issued under Article 4053, is the Game Department required to have the approval of the Governor or any other public official before such permit is effective?

"2. Can an outright sale of materials be made by the Commission, with the approval of the Governor under Article 4053d?

"3. In the event a sale of all of the materials in any given area is made and wholly or partially paid for, with the approval of the Governor under Art. 4053d, then does the Game, Fish and Oyster Commission have authority to issue a permit to another shell operator to go into the same territory and take therefrom the materials mentioned in said article of the statute?

"4. Are sales made under Art. 4053d, with the approval of the Governor, valid and binding?

"5. If such sales are valid and binding, then would the purchaser have the right to assign the contract or transfer the materials so purchased to some other person or corporation?"

We believe that if we can clarify our holding in Opinion No. 0-2209, the answers to each of your questions will suggest themselves. In that opinion, we traced the legislative history of Articles 4053 and 4053d and found that they were originally part and parcel of the same bill. They must be construed together.

Article 4053 (as originally enacted, Section 5 of Chapter 68, Acts 1911) provides that "Anyone desiring to purchase . . . mudshell" is directed to make written application to the Game, Fish, and Oyster Commission. If the Commission finds in exercising its administrative judgment that the operation will not injuriously affect the location and the marine life therein, a permit may be granted to operate in the territory described in the application.

Article 4053, then, from the time of its original enactment until the present time has contemplated the purchase of mudshell and other materials, and as a condition precedent to the sale provided for in Article 4053d (as originally enacted, Sec. 6 of Chapter 68, Acts 1911) the purchaser must secure a permit from the Commission which will constitute an administrative determination that the taking of the material will not "damage or injuriously affect any oysters, oyster beds, fish inhabiting waters thereof or adjacent thereto", or will not "damage or injuriously affect any island, reef, bar, channel, river, creek or bayou used for frequent or occasional navigation, nor change or otherwise injuriously affect any current that would affect navigation".

With respect to these findings, the Governor of the State has no concern. Instead, the Legislature has provided a specialized, highly trained instrumentality, the Game, Fish and Oyster Commission, to cope with the technical problems involved. Up until this point the exercise of administrative discretion for the purpose of safeguarding fish and other marine life and their places of habitation is a matter wholly within the exclusive province of the Game, Fish and Oyster Commission. The Legislature so provided. But in supplying the terms and conditions of sale, the concomitant of the preliminary steps of making an application and securing a permit, the Legislature felt that the chief executive officer of the State, the Governor, should have a voice. His authority is limited to determining these matters of public policy.

Underlying the whole transaction, however, is the policy manifested by the Legislature, that,

"No special privilege or exclusive right shall be granted to any person, association of persons, corporate or otherwise, to take or carry away any of such products of any territory or to otherwise operate in or upon any island, reef, bay, lake, river, creek, or bayou included in this chapter."

We feel that the foregoing discussion will answer Questions 1, 2, and 4 in your letter.

Question 3 is answered in Opinion No. O-2209, but for the purpose of clarity we add that no valid sale of all of any material in a given area may be made, if the practical effect of the transaction will be to exclude other operators from taking or carrying away any of such product from any territory, reef, bay, lake, river, creek or bayou. The undoubted intent of the Legislature was to protect the public from the monopoly of any operator in any given territory.

In answer to Question 5, it is the opinion of this department, and you are respectfully advised that a contract of sale, an important ingredient of which is the administrative determination of the Commission of non-injury to fish and location, evidenced in a permit, is not assignable. The statute does not concern itself, however, with the transfer or sale of material which has been removed by an operator.

                                        Very truly yours

APPROVED MAY 21, 1940                   ATTORNEY GENERAL OF TEXAS

/s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS               By  /s/ Walter R. Koch
                                                Walter R. Koch
                                                    Assistant


                                        By  /s/ James D. Smullen
                                                James D. Smullen

JDS:RS:LM

                              APPROVED
                              OPINION
                              COMMITTEE
                              BY /s/ BWB
                              CHAIRMAN